```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHRIS HATZAKOS,                                                 :
                                                                :
                              Plaintiff,                        :
                                                                :
              -against-                                         :       **MEMORANDUM & ORDER**
                                                                :       03-CV-5428 (DLI)(VVP)
ACME AMERICAN REFRIGERATION, INC.,                              :
ACME AMERICAN REPAIRS, INC.,                                    :
ACME AMERICAN ENVIRONMENTAL, INC.,                              :
and MATTHEW DICKMANN,                                           :
                                                                :
                              Defendant.                        :
                                                                :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Chris Hatzakos ("Plaintiff") brings this action against Acme American Refrigeration, Inc., Acme American Repairs, Inc. and Acme American Environmental, Inc. (collectively "defendants") for discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"). He contends that defendants fired him because he suffered from depression. Plaintiff also asserts discrimination claims in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Admin. Code § 8-107 *et seq.* ("NYCHRL"). Plaintiff brings an additional claim against defendant Matthew Dickmann ("Mr. Dickmann") for aiding and abetting in violation of NYSHRL § 296.6 and NYCHRL § 8-107(6). Finally, plaintiff alleges that he suffered intentional infliction of emotional distress. Before the court is defendants' motion for summary judgment. For the reasons set forth below, defendants' summary judgment motion is denied.

**Background**

1. <u>Plaintiff's Employment at Refrigeration</u>

On October 3, 2002, Mr. Dickmann, the president of Acme American Refrigeration, Inc. ("Refrigeration"), interviewed and hired plaintiff to work as a technician's helper/trainee. (Dickmann Aff. ¶ 4.) Refrigeration is a New York corporation engaged in the business of repair, maintenance and installation of refrigeration equipment for large institutions, such as hospitals, universities, nursing homes and penal institutions. (Dickmann Aff. ¶ 3.) As a technician's helper/trainee, plaintiff was assigned to work with other mechanics as a member of a two man team. In that capacity, plaintiff was exposed to high voltage, heavy equipment, and used electric tools and welding equipment. (Hatzakos Dep. 38, 41-42, Mar. 8, 2005; Dickmann Dep. 233-34, 245-47, 249, Mar. 9, 2005.) Following the interview, Mr. Dickmann gave plaintiff a copy of Refrigeration's "Rules of Conduct" which provide in relevant part:

> Excessive or habitual absences or lateness is grounds for disciplinary action whether such absence is with pay or not. As an integral part of our working force, your prompt attendance is necessary. You should attend to personal matters outside the Company's time. The first unexcused lateness or absence will result in a warning. The second unexcused lateness of absence will result in suspension. A third unexcused lateness will be subject to immediate discharge.

(Dickmann Aff. ¶ 4, Ex. B, Section 3.) Mr. Dickmann advised plaintiff to call the office if he was ever going to be absent from work. (Hatzakos Dep. 29.) At no time during the interview or thereafter, until late February 2003, did plaintiff advise defendants, or were defendants aware, that plaintiff was suffering from depression. (Dickmann Aff. ¶ 4.)

Plaintiff was employed by Refrigeration from October 4, 2002 until a date in late February, sometime after February 24, 2003. (Dickmann Aff. ¶ 4.) During that time, plaintiff was absent on

December 4 and 26, 2002, January 3, 9, 10, 13, 21 and 31, 2003 and February 12, 13, 17 and 24, 2003. (Dickmann Aff. ¶ 5, Ex. C.) Plaintiff called in sick on the mornings he was absent from work to notify the appropriate individuals that he would be unable to work that day. (Defs.' Mem. Supp. Summ J. 6; Dickmann Aff. ¶3, Ex. C.) Mr. Dickmann alleges that he received complaints from mechanics on several occasions about plaintiff's absences. (Dickmann Dep. 193-94, 211-12, 282.) On at least two occasions prior to the meeting at which Mr. Dickmann placed plaintiff on a leave of absence, Mr. Dickmann informally warned plaintiff about his absences. (Dickmann Dep. 34-36, 172, 193.) However, plaintiff contends that these conversations occurred "in passing," and that at no time was plaintiff informed that his absences threatened his job security. (Dickmann Dep. 192.)

    2.    <u>February 2003 Meeting</u>

In or around late February 2003, Mr. Dickmann called plaintiff into his office for a meeting. (Hatzakos Dep. 36; Dickmann Dep. 215-19.) Mr. Dickmann contends that he intended to fire plaintiff at the meeting due to his chronic absenteeism. (Dickmann Aff. ¶¶ 5, 6, Ex. E.) Plaintiff's and Mr. Dickmann's versions of the conversation differ, but it is uncontested that, at some point during the meeting, Mr. Dickmann asked plaintiff whether he suffered from depression and if he was taking any medication as part of his treatment. (Hatzakos Dep. 36; Dickmann Dep. 222-23, 225-26.) When plaintiff answered in the affirmative, Mr. Dickmann requested the name and telephone number of plaintiff's treating psychiatrist because he wanted to ensure that plaintiff's condition did not subject plaintiff or his co-workers to any danger. (Hatzakos Dep. 38, 41, 45, 49.) Mr. Dickmann testified that his former business partner, Harvey Katzenberg, had also suffered from depression, and he had noticed that plaintiff, like his former business partner, would occasionally seem to be "in his own world" and would stand by himself, refusing to interact with his co-workers. (Dickmann Dep.

224, 229-30, 283-84.) At the conclusion of the meeting, Mr. Dickmann placed plaintiff on an unpaid leave of absence that was to last until Mr. Dickmann could speak with plaintiff's psychiatrist regarding his condition and/or a "light duty" assignment could be found. (Dickmann Aff. ¶ 6.) Mr. Dickmann instructed plaintiff to call defendants' office periodically to see if a suitable assignment for plaintiff had been found. (Dickmann Aff. ¶ 6.)

Approximately a week after the February 2003 meeting, Mr. Dickmann called plaintiff's psychiatrist, Dr. John Tsiouris. (Dickmann Dep. 244-47.) Dr. Tsiouris confirmed that plaintiff was under his care and fit to work. (Dickmann Dep. 247.) However, Mr. Dickmann contends that Dr. Tsiouris "did not guarantee that [plaintiff's] medications did not pose a danger to himself, his peers, and the client." (Wigdor Aff. ¶ 7, Ex. D at 2.) Although Mr. Dickmann does not "remember exactly what [Dr. Tsiouris] said [in response to the question whether the medication could pose a threat risk]," it was "[s]omething along the lines [of] he's stable, he's okay." (Dickmann Dep. 252.) As instructed, plaintiff repeatedly called the office to see if defendants had found a new position for him. (Hatzakos Dep. 44.) Mr. Dickmann contends that, although he made an effort to find a part-time position for plaintiff, he was unable to do so. (Dickmann Aff. ¶ 6.) Mr. Dickmann subsequently terminated plaintiff's employment. (Dickmann Dep. 206.)

    3.    <u>Plaintiff's Medical Condition</u>

Plaintiff allegedly suffers from Bipolar II Disorder, Panic Disorder without Agoraphobia and Dependent Personality Disorder, and has been receiving care from a psychiatrist, Dr. Tsiouris, since September 8, 1994. (Wigdor Aff. ¶ 7, Ex. E.) Plaintiff's treatment includes antidepressant and mood stabilizers. (Wigdor Aff. ¶ 7, Ex. E.) A letter from Dr. Tsiouris to the EEOC dated May 30,

2003 states that plaintiff's "condition is stable, [but a] few times a year he experiences mild depressive episodes and brief hypo manic episodes of his mood disorder." (Wigdor Aff. ¶ 7, Ex. E.)

    4.    Procedural History

On May 12, 2003, plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that defendants' actions violated Title I of the ADA. Mr. Dickmann responded to the charge with a letter dated July 7, 2003, which states in relevant part:

> A conversation with [plaintiff's] physician some time later confirmed his condition, but did not guarantee that the medications did not pose a danger to himself, his peers and the client while performing some of the more demanding duties. We are not satisfied with the physician's non-conclusive answer and explored other options. Based on sporadic attendance it was decided that an opportunity to continue employ at our firm would not be extended, considering the fact of poor attendance. Had an appropriate position which could utilize Mr. Hatzakos's specific skills, attendance ability and condition be found we would have continued our relationship.

(Wigdor Aff. ¶ 6, Ex. D at 2.) On July 30, 2003, the EEOC issued plaintiff a notice of dismissal and right to sue letter. (Dickmann Aff. ¶ 9, Ex. F.) On October 28, 2003, plaintiff filed the complaint in the instant action. He subsequently twice amended his complaint on October 27, 2004, and August 5, 2005. On April 10, 2006, defendant filed the instant motion for summary judgment.

**Discussion**

Defendants move for summary judgment on the grounds that: (1) plaintiff does not have a disability within the meaning of the ADA; and (2) even if plaintiff does have a disability, he has not shown that his termination was motivated by that disability. Assuming the court dismisses the federal claims, defendants argue that plaintiff's state law claims pursuant to NYSHRL and NYCHRL, as well as the intentional infliction of emotional distress claim, should be dismissed for lack of subject matter jurisdiction. For the reasons set forth below, the court finds that triable issues

of fact remain with respect to whether (1) plaintiff is substantially limited in the major life activity of "interacting with others", (2) defendants perceived plaintiff to have a mental impairment that substantially limited his ability to "interact with others", (3) plaintiff was fired "because of" his disability, and (4) defendants failed to reasonably accommodate plaintiff's known disability. Hence, defendants' motion for summary judgment is denied.

**I.      Summary Judgment Standard**

Summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. *See Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In reviewing the record, the court must view all facts in the light most favorable to the nonmoving party. *See id*. at 250. Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Second Circuit has recognized that courts must be cautious when granting summary judgment in employment discrimination cases because the employer's intent is frequently at issue. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1998). However, summary judgment may still be appropriate "even in the fact-intensive context of discrimination cases." *Abdu Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). To

defeat a motion for summary judgment, however, the nonmoving party "must provide more than conclusory allegations of discrimination." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). There is no genuine issue of material fact for trial unless sufficient evidence in the record exists favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249-50. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

## II. Disability Discrimination Claim[1]

In the present case, plaintiff claims that he was fired as a result of his disability in violation of the ADA. The ADA prohibits discrimination against qualified individuals with a disability. 42 U.S.C. § 12112(a); *Sutton v. United Air Lines,* Inc., 527 U.S. 471, 476, 119 S. Ct. 2139, 144 L. Ed 2d 450 (1999). To survive this motion for summary judgment, plaintiff therefore must present sufficient evidence from which a jury could find that (1) defendants are covered by the ADA, (2) plaintiff suffers from a disability within the meaning of the ADA, (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation, and (4) he suffered an adverse employment action because of his disability. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869-70 (2d Cir. 1998); *Wernick v. Federal Reserve Bank of N.Y.,* 91 F.3d 379, 383 (2d Cir. 1996).

---

[1] The court notes that New York's highest court has interpreted the meaning of "disability" under the NYSHRL and the NYCHRL to be broader than the meaning of "disabled" under the ADA. *See Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir. 2001). According to the NYSHRL, a "disability" is "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21). Similarly, the NYCHRL defines "disability" to mean "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y. City Admin. Code § 8-102(16)(a). Neither of these definitions requires the plaintiff to show that his disability "substantially limits a major life activity." *Giordano,* 274 F.3d at 754.

Here, defendants do not contest that they qualify as an employer within the meaning of the ADA. 42 U.S.C. § 12111(5)(A) (defining an "employer" as a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."). Defendants also do not appear to contest that plaintiff was able to perform the essential functions of the job. Moreover, there is no dispute as to the first part of the fourth prong, as plaintiff's termination constituted an adverse employment action. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir. 2001) (defining "adverse employment action" broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."). However, the parties do dispute whether genuine issues of material fact exist with respect to (1) the second prong, whether plaintiff suffers from a disability within the meaning of the ADA, and (2) the second part of the fourth prong, whether he suffered the adverse employment action "because of" his disability.

### A. Disability under the ADA

The ADA defines "disability" as either: (A) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such impairment. 42 U.S.C. § 12102(2); *Sutton,* 527 U.S. at 478. Here, plaintiff claims that he is disabled because he suffers from Bipolar II Disorder, Panic Disorder and Dependent Personality Disorder, which substantially limit his ability to interact with others, and because defendants regarded him as having such an impairment.

### 1. Impairment that Substantially Limits a Major Life Activity

When determining whether a plaintiff suffers a disability under the first subsection of the ADA's definition, the court must use a three step approach. *See Bragdon v. Abbot,* 524 U.S. 624,

118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir. 1998). The court must first determine whether the plaintiff suffers from an impairment. *Id*. Second, the court must ascertain whether the life activity identified by the plaintiff constitutes a "major life activity." *Id*. Third, the court must determine whether the plaintiff's impairment "substantially limits" the major life activity he has identified. *Id*.

The EEOC regulations issued in conjunction with the ADA define a "mental impairment" as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). A court must accord "great deference to the EEOC's interpretation of the ADA, since it is charged with administering the statute." *Francis v. City of Meriden,* 129 F.3d 281, 283 n. 1 (2d Cir. 1997). Depression and bipolar disorder fall within the term "mental or psychological" disorder. *Dean v. Westchester County P.R.C.,* 309 F. Supp. 2d 587, 593-94 (S.D.N.Y. 2004); *Jaques v. DiMarzio, Inc.,* 386 F.3d 192, 201 (2d Cir. 2004). Here, plaintiff allegedly suffers from depression, or more specifically, Bipolar II Disorder, Panic Disorder and Dependent Personality Disorder. Plaintiff's only medical evidence is an unsworn letter written by his treating psychiatrist, Dr. Tsiouris, dated May 30, 2003, that corroborates plaintiff's asserted psychological disorders.[2] (Wigdor Aff. ¶ 7, Ex.

---

[2] Fed.R.Civ.P. 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This requirement means that "[h]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e) ] affidavit." 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed. 1985) (footnote omitted); *see, e.g., Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 105 n. 11 (2d Cir.1981). Dr. Tsiouris's unsworn letter is generally inadmissible hearsay. As such, it is an insufficient basis for opposing defendants' motion for summary judgment. *See Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir. 1986).

E.) However, defendants do not dispute that plaintiff suffers from depression and bipolar disorder. Accordingly, for present purposes, the court accepts plaintiff's allegation that his psychological disorders qualify as an impairment under the ADA.

"Major life activities" include, but are not limited to, functions such as caring for oneself, walking, seeing, hearing, speaking, breathing, learning and working. *See* 29 C.F.R. § 1630.2(i); *Bragdon,* 524 U.S. at 638-39. However, this list is not all-inclusive, and the Second Circuit has held that plaintiff's proffered activity, "interacting with others", also constitutes a major life activity under the ADA. *See Jaques,* 386 F.3d at 202. The Second Circuit has instructed that a plaintiff is "substantially limited" in his ability to "interact with others" when the "mental . . . impairment severely limits the plaintiff's ability to connect with others, i.e., to initiate contact with other people and respond to them, or to go among other people at the most basic level of these activities." *Id.* The Second Circuit further instructed that "a plaintiff who otherwise can perform the functions of a job with (or without) reasonable accommodation could satisfy this standard by demonstrating isolation resulting from any of a number of severe conditions, including acute or profound cases of: autism, agrophobia, depression . . . ." *Id.* at 203-04.

Defendants point to plaintiff's testimony that he got along with his co-workers, and that he was able to perform the essential functions of his job, in arguing that plaintiff's impairment does not substantially limit his ability to perform the major life activity of "interacting with others." (Defs.' Reply Mem. Supp. Summ J. 1, 2; Hatzakos Dep. 39, 59.) However, plaintiff asserts that his frequent absences from work were marked by his inability to get out of bed and face the prospect of interacting with others. (Pl.'s Mem. Opp. Summ. J. 6, 7.) Moreover, Mr. Dickmann testified that plaintiff would often seem to be "in his own world," standing by himself and refusing to interact with

his co-workers. (Dickmann Dep. 224, 229-30, 283-84.) In viewing the record in a light most favorable to the nonmoving party, a genuine issue of material fact exists whether plaintiff's depression and bipolar disorder substantially limited his ability to interact with others. *See Anderson,* 477 U.S. at 250.

2. <u>Regarded as Impaired</u>

Even if plaintiff is not substantially limited in a major life activity, the inquiry would not end there. The third way to establish a disability under the ADA is to prove that the plaintiff is "regarded as" having an impairment that substantially limits one or more major life activities. *Colwell,* 158 F.3d at 646. The essential issue is not whether plaintiff is actually disabled, but whether defendants perceived him to be disabled within the meaning of the ADA. *See Rivera v. Apple Industrial Corp.,* 148 F. Supp. 2d 202, 214 (E.D.N.Y. 2001). There are two circumstances under which an employee can be regarded as disabled under the ADA: "(1) a covered entity mistakenly believes that a person has a physical [or mental] impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 491.

In the present case, concrete evidence exists that defendants perceived plaintiff as having a mental impairment because Mr. Dickmann asked plaintiff whether he suffered from depression at the February 2003 meeting, even though Mr. Dickmann concedes that plaintiff had never disclosed this fact to him. (Hatzakos Dep. 36; Dickmann Dep. 222-26.) Concrete evidence also exists that Mr. Dickmann perceived plaintiff's depression to substantially limit a major life activity because he testified that plaintiff's behavior resembled that of his former business partner, Harvey Katzenberg, who had also suffered from depression, in that he would occasionally seem to be "in his own world,"

and would stand by himself, refusing to interact with his co-workers. (Dickmann Dep. 224, 229-30, 283-84.) Although Mr. Dickmann testified that plaintiff's behavior was not as serious as Mr. Katzenberg's had been, sufficient evidence exists from which a reasonable juror could find that defendants perceived plaintiff to be disabled within the meaning of the ADA. (Dickmann Dep. 230.)

### B. Adverse Employment Action Because of Disability

The "ultimate issue" in an employment discrimination case is "whether plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Gonzalez v. Rite-Aid of New York, Inc.,* 199 F. Supp. 2d 122, 130 (S.D.N.Y. 2002) (quoting *Stratton v. Dep't for the Aging,* 132 F.3d 869, 878 (2d Cir. 1997)). To show that a plaintiff suffered an adverse employment action because of his disability, the plaintiff need not prove that disability, or the perception of disability, was the sole cause for the employer's decision. *See Parker v. Columbia Picture Indus.,* 204 F.3d 326, 337 (2d Cir. 2000). Rather, a plaintiff "must show only that disability played a motivating role in the decision." *Id*.

In the absence of direct evidence of discrimination, the Second Circuit applies the familiar burden-shifting analysis of federal discrimination claims set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see also Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998) (applying *McDonnell Douglas* framework in ADA case). However, where the plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* analysis is inapplicable. *See Gonzalez,* 199 F. Supp. 2d at 131. Instead, a "mixed-motive" analysis is more appropriate. *Id*. A plaintiff may establish a "mixed-motive" case by "convic[ing] the trier of fact that an impermissible criterion in fact entered into the employment

decision." *Id*. (quoting *Stratton,* 132 F.3d at 78 n. 4). If the employee convinces the trier of fact, he succeeds unless his employer proves its "affirmative defense"; that is, "that it would have reached the same decision as to [the employee's employment] even in the absence of the impermissible factor." *Mt. Healthy City Bd. Of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); *Tyler v. Bethlehem Steel,* 958 F.2d 1176, 1181 (2d Cir. 1992).

    1.    The Employment Decision

Under this standard of causation, plaintiff has succeeded in establishing the final element of his *prima facie* case because concrete evidence exists that plaintiff's depression was a factor in Mr. Dickmann's decision. Mr. Dickmann contends that he initiated the February 2003 meeting to fire plaintiff on account of his chronic absenteeism. (Dickmann Aff. ¶¶ 5, 6.) However, defendants do not dispute that Mr. Dickmann asked plaintiff at the meeting whether he suffered from depression and if he was taking medication as part of his treatment. (Hatzakos Dep. 36; Dickmann Dep. 222-26.) When plaintiff answered in the affirmative, Mr. Dickmann asked for the name and telephone number of plaintiff's treating psychiatrist because he wanted to ensure that plaintiff's condition did not endanger plaintiff or his co-workers. (Hatzakos Dep. 38, 41, 45, 49.) Mr. Dickmann placed plaintiff on an unpaid leave of absence to allow him sufficient time to call plaintiff's psychiatrist. (Dickmann Aff. ¶ 6.) In his affidavit, Mr. Dickmann stated:

> I told plaintiff that I would speak to his physician, and indicated that if his physician made me comfortable that his employment would not pose a danger to himself or other employees, I would attempt to find a part-time position for him at one [sic] of the defendant companies. However, to give me an opportunity to speak with his doctor, I placed him on leave of absence until he heard from me to the contrary. I had a brief telephone conversation with his physician who confirmed to me that he had been treating plaintiff for depression and that his condition was stable . . . the doctor did not say that plaintiff's illness or medication would not pose a danger to plaintiff or others.

(Dickmann Aff. ¶¶ 6, 7.) During his deposition, Mr. Dickmann further testified that does not "remember exactly what [Dr. Tsiouris] said" in response to the question whether plaintiff's illness or medication would pose a risk of danger to himself or others, but it was "[s]omething along the lines he's stable, he's okay. [Dr. Tsiouris] was noncommital." (Dickmann Dep. 252.) Based on this conversation with plaintiff's psychiatrist, Mr. Dickmann subsequently terminated plaintiff's employment. (Dickmann Dep. 26.) Accordingly, these allegations are sufficient to satisfy plaintiff's burden of claiming that his disability was a motivating factor in his termination. *See Baird v. Rose,* 192 F.3d 462, 469 (4th Cir. 1999) (reversing dismissal of ADA claim where plaintiff alleged that both disability and absenteeism contributed to her exclusion from school activity).

Furthermore, the causal relationship between the disability and the adverse employment decision need not be direct. The plaintiff may establish that the employment decision was motivated by his disability by "demonstrating that the disability caused conduct that, in turn, motivated the employer's decision." *See Gonzalez,* 199 F. Supp. 2d at 130 (*citing Greene v. New York,* 95 Civ. 6580, 1998 WL 264838, *5 (S.D.N.Y. May 22, 1998)). Thus, if the jury believes plaintiff's assertion that his absences from work were due to his inability to get out of bed and face the prospect of interacting with others, it could reasonably find causation because his depression caused conduct that, in turn, motivated the employer's decision.

  2. <u>Defendants' Affirmative Defense</u>

Even if plaintiff can convince the trier of fact that an impermissible factor entered into the employment decision, defendants argue that summary judgment is nonetheless appropriate because the decision to terminate plaintiff's employment was not based on his disability, but because he was chronically absent from work. Refrigeration's "Rules of Conduct" provide that "excessive or

habitual absences or lateness is grounds for disciplinary action . . . [and] a third unexcused lateness will be subject to immediate discharge." (Dickmann Aff. ¶ 4, Ex. B, Section 3.) Defendants contend that Mr. Dickmann was entitled to fire plaintiff because, in violation of the "Rules of Conduct", plaintiff was absent from work on December 4 and 26, 2002, January 3, 9, 10, 13, 21 and 31, 2003 and February 12, 13, 17 and 24, 2003. (Dickmann Aff. ¶ 5, Ex. C.) However, defendants concede that, in accordance with Mr. Dickmann's instructions during the October 3, 2002 interview, plaintiff called in sick on the mornings he was absent to notify the appropriate individuals that he would be unable to work that day. (Hatzakos Dep. 29; Defs.' Mem. Supp. Summ. J. 6.) Plaintiff further asserts that although Mr. Dickmann informally warned him about his absences on two occasions prior to the February 2003 meeting, at no time was plaintiff informed that his absences threatened his job security. (Dickmann Dep. 34-36, 172, 193-93.) Moreover, a close reading of the "Rules of Conduct" reveals that the corporation's policy is unclear with respect to the number of sick days an employee is permitted to take and what constitutes an "excused" versus an "unexcused" absence. Thus, a reasonable trier of fact could find that plaintiff's absences did not violate Refrigeration's "Rules of Conduct" because they were excused; thus, Mr. Dickmann was not justified in his decision to terminate plaintiff's employment.

To the extent defendants argue that they were entitled to fire plaintiff when Dr. Tsiouris did not guarantee that plaintiff's medications did not pose a danger to himself or others, defendants' argument fails. Under the ADA, a person is a "direct threat," and thus unqualified as a matter of law, if they pose a significant risk to the health and safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. 42 U.S.C. § 12111(3); *Chevron U.S.A. Inc. v. Echazabal,* 536 U.S. 73, 79, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002). The determination of

whether an individual poses a "direct threat" must be made on a case-by-case basis. 29 C.F.R. § 1630.2(r); *Lovejoy-Wilson,* 263 F.3d at 220. The EEOC regulations delineate factors the court can use to ascertain an individual's potential risk: (1) nature of the risk; (2) duration of the risk; (3) likelihood that harm will occur; and (4) imminence of potential harm. *Id*. In the present case, defendants have failed to provide any evidence that plaintiff posed a significant risk of substantial harm. Nowhere in defendants' briefs have they identified the nature of the risk posed by plaintiff's psychological disorders or medications, must less the likelihood or imminence of the potential harm. Moreover, Dr. Tsiouris never stated that plaintiff's medications posed a danger to plaintiff or his co-workers, and Mr. Dickmann concedes that he never received any complaints from plaintiff's co-workers indicating that plaintiff's condition posed a potential threat. To constitute a "direct threat", the probability of significant harm must be substantial, constituting more than a remote or slightly increased risk. 29 C.F.R. § 1630.2(l); *Bragdon,* 524 U.S. at 649. Defendants' allegations here fall short of this standard.

      3.     <u>Reasonable Accommodation</u>

Furthermore, a genuine issue of material fact remains with respect to whether defendants satisfied their duty to reasonably accommodate an employee's known disabilities. 42 U.S.C. § 12112(b)(5)(A); *Parker,* 204 F.3d at 338. Under the ADA, "[f]ailure to consider the possibility of reasonable accommodation for . . . disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disability." *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 143 (2d Cir. 1995). Reasonable accommodations can include job restructuring, part-time or modified work schedules, reassignment, or acquisition or modification of equipment or devices. 42 U.S.C. § 12111(9)(A)(B). The ADA "envisions an 'interactive process'

by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. New York State Dep't of Labor,* 205 F.3d 562, 566 (2d Cir. 2000). The interactive process is triggered by either the disabled employee's request for accommodation or by the employer's recognition of the need for such an accommodation; and, once initiated, it requires communication and a good faith exploration of possible accommodations between employers and employees. *See Felix v. New York City Transit Auth.,* 154 F. Supp. 2d 640, 656-57 (S.D.N.Y. 2001). If an employer fails to engage in the interactive process of accommodating an employee, and its omission results in a failure to reasonably accommodate the employee's disability, the employer is subject to liability. *See* 29 C.F.R. § 1630.2(o)(3) ("[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation."). In such cases, plaintiff need only show that the accommodation was reasonable and does not impose an undue hardship on the operation of the business. 42 U.S.C. § 12111(10).

Here, defendants, and more specifically Mr. Dickmann, were put on notice that plaintiff suffered from various psychological disorders at the February 2003 meeting. (Dickmann Aff. ¶ 6.) At that time, Mr. Dickmann initiated the "interactive process" by telling plaintiff that he intended to retain him if a part-time position that would not be jeopardized by his absences arose. (Dickmann Aff. ¶ 6.) Mr. Dickmann instructed plaintiff to periodically call defendants' office to see if a part-time position was available. (Dickmann Aff. ¶ 6.) Mr. Dickmann contends that, although he attempted to find a part-time position for plaintiff, none was available. (Dickmann Aff. ¶ 6.) However, a question as to whether defendants engaged in the interactive process in good faith exists because plaintiff asserts, and defendants do not contest, that, when plaintiff called defendants' office,

as instructed, he never received an update on his employment status, and merely was told to call back at a later date. (Hatzakos Dep. 44.)

**III.	Plaintiff's Pendent State Law Claims**

Defendants request dismissal of plaintiff's state law claims pursuant to NYSHRL and NYCHRL, as well as plaintiff's intentional infliction of emotional distress claim, on the assumption that plaintiff's federal claim is dismissed. That not being the case, this prong of the motion is denied. Accordingly, the court elects to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Conclusion**

For the reasons set forth above, the court finds that plaintiff has set forth sufficient evidence to present a *prima facie* case under the ADA and that genuine issues of material fact exist. Therefore, defendant's motion for summary judgment is denied in its entirety. This matter is referred to the magistrate judge for further pretrial proceedings and settlement negotiations

SO ORDERED.

DATED:	Brooklyn, New York
	July 6, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge